IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WENDY GUZMAN, INDIVIDUALLY | §§ | |
| AND AS NEXT FRIEND OF TG, A | §§ | |
| MINOR, PLAINTIFF | §§ | |
| | §§ | NO. 4:07-cv-03973 |
| V. | §§ | (JURY DEMANDED) |
| | §§ | |
| MEMORIAL HERMANN HOSPITAL | §§ | |
| SYSTEM D/B/A MEMORIAL HERMANN | §§ | |
| SOUTHEAST HOSPITAL, DEFENDANT | §§ | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT
MEMORIAL HERMANN'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Summary judgment should be denied in this case because:

**1.     Discrimination is not an element of an EMTALA screening case.**

**2.     Memorial had a duty to screen for the emergency medical condition as alleged.**

**3.     There is no proof that Memorial's EMTALA screening violations were *de minimis*.**

**4.     Defendant Memorial has admitted it had no substantive medical screening procedures at all.**

**5.     Memorial's analysis of the stabilization claim is misplaced.**

**6.     Wendy Guzman's signing of an outdated consent form does not exonerate Memorial from the transfer violations.**

---

**1.     Discrimination is not an element of an EMTALA screening case.**

Without pointing to a single word in the text of EMTALA that requires proof of

discriminatory motive, Memorial stridently clings to its argument that "something more" than

disparate treatment is required under EMTALA, asserting without authority that the "something"

is discriminatory intent.  The only new legal support for its argument is a law review article, written

by Beverly Cohen, a law professor at the University of Albany.  Beverly Cohen, *Disentangling*

*EMTALA from Medical Malpractice: Revising EMTALA's Screening Standard to Differentiate*

*Between Ordinary Negligence and Discriminatory Denials of Care,* 82 TULANE L. REV. 645, 684

(Nov. 2007).  The title alone should be sufficient to recognize that this is an advocacy article that

suggests abandoning current law and adopting the unique minority position of the Sixth Circuit in

*Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266 (6th Cir. 1990), which requires proof of

discriminatory motive in order for Plaintiff to prove an EMTALA case.  Each citation by Memorial

of the Cohen article is taken from the context of "revising" the standard, not what the standard

actually is.  While Plaintiffs have previously identified most of the nearly unanimous authority that

rejects the *Cleland* motive requirement, Cohen set forth the tidal wave of holdings contrary to

*Cleland* in footnote 175, which is reproduced below.[1]  Furthermore, Cohen acknowledges in her

---

[1]

n175.  See, e.g., Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1138 (8th Cir. 1996)
("We cannot agree that such evidence of improper motivation is essential... . Every court of
appeals, with the exception of the Cleland court, which has addressed the issue, has rejected the
proposition that improper motive must be shown."); Correa v. Hosp. S.F., 69 F.3d 1184, 1193-94
(1st Cir. 1995) ("Every court of appeals that has considered this issue has concluded that a desire to
shirk the burden of uncompensated care is not a necessary element of a cause of action under
EMTALA. We think that these cases are correctly decided, and that EMTALA does not impose a
motive requirement." (citations omitted)); Gatewood v. Wash. Healthcare Corp., 933 F.2d 1037,
1041 (D.C. Cir. 1991) (stating that EMTALA applies "whenever and for whatever reason a patient
is denied the same level of care provided others" and that "the motive for such departure [from
standard screening procedures] is not important to this analysis"); Scott v. Hutchinson Hosp., 959
F. Supp. 1351, 1357 (D. Kan. 1997) ("[A] plaintiff need not show the hospital's motive was to
dump a patient in order to recover under EMTALA."); Hart v. Mazur, 903 F. Supp. 277, 280
(D.R.I. 1995) ("[A] desire to shirk the burden of uncompensated care is not a necessary element of
a cause of action under EMTALA."); Brodersen v. Sioux Valley Mem'l Hosp., 902 F. Supp. 931,
948 (N.D. Iowa 1995) ("[A] defendant's motive in failing to provide appropriate emergency
treatment is irrelevant."); Lane v. Calhoun-Liberty County Hosp. Ass'n, 846 F. Supp. 1543, 1550
(N.D. Fla. 1994) ("This Court does not find a hospital's motive to be relevant to bringing claims
under the EMTALA."); Jones v. Wake County Hosp. Sys., Inc., 786 F. Supp. 538, 544 (E.D.N.C.
1991) ("Although the legislative history focused on concern for hospital refusing to treat patients

article that there is no textual support for the requirement of discriminatory intent in the statute. "Most of these courts rejected the *Cleland* rationale because nowhere in the text of EMTALA does the statute itself incorporate improper motive by the hospital as an element of the claim." Cohen, at 676.

Memorial argues on page 4 in footnote 2 of its reply brief, that "neither *Roberts v. Galen,* 525 U.S. 249, 253 (1999) nor *Power,* 42 F.3d 851, 858 (4th Cir. 1994) changes the analysis of this case," arguing that *Roberts* is irrelevant to a screening case. Yet even Professor Cohen has recognized the impact of *Roberts* in the suggesting that discriminatory motive is irrelevant in EMTALA screening cases.

> Additional support for the majority position that an EMTALA screening claim need not allege bad motive came from the United States Supreme Court in *Roberts v. Galen of Virginia, Inc.* In *Roberts*, the Court ruled that EMTALA's stabilization provision does not expressly require an ""appropriate' stabilization," so that it cannot reasonably be interpreted to require proof of an improper motive. *Roberts* is not conclusive on the question of whether improper motive is required as proof of EMTALA's appropriate screening requirement. However, Roberts at least underscores the fact that the text of EMTALA's screening provision does not expressly require a bad motive. This omission lends support to the position that the lack of a bad motive element was deliberate and intended by Congress.

Cohen, *supra*, at 677, 678.

The Court should recognize, as Professor Cohen does, that the incorporation of a discriminatory intent standard would require a change in current law, whereby one would read the

---

based on improper motives, Congress did not incorporate that motive requirement into the statute."); Chiles, supra note 156, at 571 (stating that most courts have discounted motive in EMTALA screening cases); cf. Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 798 (10th Cir. 2001) ("While testimony regarding a hospital's knowledge of a patient's lack of insurance coverage may be relevant to explain a failure to abide by established procedures, it alone does not establish a violation of EMTALA's requirement of uniform treatment."); Griffith v. Mount Carmel Med. Ctr., 831 F. Supp. 1532, 1540 (D. Kan. 1993) (holding that while proof of improper motive is not an essential element of plaintiff's case, "evidence of motive may be relevant").

word "appropriate" to mean "nondiscriminatory." It would be perfectly appropriate for Congress to make such a change, but a court making such an interpretation would require the highest form of judicial activism to reject the nearly unanimous contrary position and insert discriminatory intent into a statute that omits those words.

2. **Memorial had a duty to screen for the emergency medical condition as alleged.**

Memorial argues that EMTALA does not require a hospital to rule out all potential conditions. However, this argument does not address what happened in this case, i.e. the failure to complete the medical screening exam as ordered by Dr. Haynes and as described in Memorial's "Emergency Center Triage Guidelines." Memorial cites neither a case nor the EMTALA statute to support its argument that the alleged emergency medical condition (symptoms that could be caused by a bacterial infection that had not been ruled out) is an improper allegation under EMTALA. Yet *Battle v. Memorial Hosp. at Gulfport,* 228 F.3d 544 (5th Cir. 2000) and *Hoffman v. Tonnemacher*, 425 F.Supp.2d 1120 (E.D. Cal. 2006) are both cases in which the alleged emergency medical condition was a bacterial infection that had not been ruled out. It is just as much a part of emergency medicine to rule out potential conditions as it is to confirm them in order to determine if an emergency medical condition exists.

Memorial argues that "Plaintiff's interpretation of EMTALA would impose on hospital emergency room the requirement to continue diagnostic testing, regardless of the physician's judgment that further testing is unnecessary, to rule out any potential complications." Memorial's Reply Brief, at page 2. This misses the point: the problem in TG's case is that Memorial did not complete the required initial examination, based on his initial symptoms, which would have included a CBC, a urinalysis, and monitoring of vital signs. It is not continued diagnostic testing that is in

question, but the failure to complete the required standard exam for the presenting complaints.

**3.      There is no proof that Memorial's EMTALA screening violations were *de minimis*.**

The only support for Memorial's *de minimis* argument is the argument of its counsel. Plaintiffs have offered summary judgment proof in the affidavit of Dr. Hayden that the failure to complete the CBC by interpreting the white cell differential, the failure to perform the urinalysis and the failure to monitor vitals signs were significant deviations from standard screening procedures and were medically important for a patient like TG. Memorial has not objected to this portion of Dr. Hayden's affidavit. To show that these deviations from its standard procedures were *de minimis,* Memorial needs some proof, and it has none. The court should not decide *sua sponte* that the deviations are *de minimis*, in the presence of summary judgment proof showing their significance.

**4.      Defendant Memorial has admitted it had no substantive medical screening procedures at all.**

Plaintiffs do not in any way believe Memorial's contention that its "Emergency Center Triage Guidelines" are not part of Memorial's medical screening policy and procedure. But assuming, solely for the sake of argument, that this is true, Memorial still must lose on summary judgment because it would therefore be left with no policies that apply to TG. Memorial has now unequivocally stated on page 6 of its reply brief:

> MHSE's only written medical screening policy is a general policy that applies to physician assistants and nurse practitioners and does not set forth a symptom-specific screening porcedure. MHSE is not required to create a symptom-specific policy and has not done so. *See Baber,* 977 F.2d at 879, n.2.

Since Memorial has provided no summary judgment evidence of a verbal policy, and none has been disclosed in discovery, it is safe to conclude that Memorial has neither a written nor a verbal policy that applies to physicians, or to specific symptoms.

Consider the magnitude of such a statement. The biggest hospital chain in the fourth largest city in the United States claims that it has no uniform substantive policy about how its patients will be treated. No heart attack protocol. No stroke protocol. No protocol for high risk pregnancies. No standard protocol even to the general approach of any patient.

Memorial argues that somehow the "Medical Screening Criteria to Timely Identify Patients Not Presenting with an Emergency Medical Condition" (hereinafter referred to as the "Flanagan policy") satisfies its EMTALA obligation. Yet this policy does not apply to physicians or to TG. Thus, if the "Triage Guidelines" are not the written policy, Memorial has no substantive policy at all about what should constitute the "appropriate medical screening exam" that EMTALA requires. This is clearly a violation of EMTALA. *Power, supra* ("failure to have any screening procedures could itself be a violation of EMTALA."). Memorial's citation of the footnote to *Baber, supra,* does not support its proposition that the "Flanagan policy" is enough to satisfy EMTALA. Footnote 6 from *Baber* states:

> FN6. While a hospital emergency room may develop one general procedure for screening all patients, it may also tailor its screening procedure to the patient's complaints or exhibited symptoms. For example, it may have one screening procedure for patients suffering a heart attack and another for women in labor. Under our interpretation of EMTALA, such varying screening procedures would not pose liability under EMTALA as long as all patients complaining of the same problem or exhibiting the same symptoms receive identical screening procedures. We also recognize that the hospital's screening procedure is not limited to personal observation and assessment but may include available ancillary services through departments such as radiology and laboratory.

This citation makes clear that there must be some screening policy that applies to all patients. It is clear that the "Flanagan policy" does not apply to all patients. It does not apply to TG. It does not apply to any patient who meets the triage requirements to be seen by a physician. It is not even clear

that the "Flanagan policy" even applies to Memorial Hermann SE.  There is not one shred of summary judgment testimony that it does.  If Memorial's statements are accepted as true, and the "Flanagan policy" is its one and only screening policy, then it amounts to no policy at all and violates EMTALA.

Memorial also makes the argument that the "Triage Guidelines" cannot be a medical screening policy because Memorial claims they are implemented only by the nurses, and only when there is a delay to see the physician.  If so, the "Flanagan policy" is also not a medical screening policy, because it is implemented only when the patient is to be seen by a physician's assistant or nurse practitioner.  If the "Triage Guidelines" cannot be the screening  policy, neither can the "Flanagan policy" under the same reasoning.

Memorial seems to assert that Plaintiffs' discussion of the "Triage Guidelines" is only in the context of the need to include a urinalysis as part of the medical screening exam.  This is incorrect. The "Triage Guidelines" include requirements for both a urinalysis and a CBC.  With regard to the CBC, the guidelines confirm that Dr. Haynes was partially on the right track in ordering a CBC, but that the test was never completed.

Throughout this case, and this summary judgment proceeding, Memorial has continually shifted and modified its position about whether it had any policies and procedures in effect for medical screenings under EMTALA.  The "Emergency Center Triage Guidelines" state on their face that they have been approved and renewed by the administration and medical director at Memorial Hermann Southeast.  There is no proof that they were ever withdrawn.  They are still in use at the triage desk at Memorial Southeast, at least as recently as the deposition of Tammy McCrumb.  They are the only written substantive protocols concerning symptom-specific complaints that have been

produced in discovery. All that Memorial has submitted is its lawyer's denial that the guidelines were in force and effect. This is no summary judgment proof at all. Plaintiffs again urge the court to follow *Battle*, *supra,* and leave it to the jury to decide whether Memorial has a legitimate reason for deviating from these guidelines.

**5.      Memorial's analysis of the stabilization claim is misplaced.**

Memorial has chosen to ignore the language of the stabilization portion of the text of EMTALA, and the citation to *Roberts v. Galen of Virginia,* 325 F.3d 776, 787-8 (6th Cir. 2003)(after remand). It argues that there must be a single individual who knows all of the details of the existence of the emergency medical condition, and that person then chooses not to stabilize the emergency medical condition. However, it offers no authority to rebut *Roberts, id.,* and the text of the statute. The citation to *Bryant v. Adventist Health System/West*, 289 F.3d 1162 (9th Cir. 2002) is misplaced. In *Bryant,* the emergency physician misread the x-ray taken in the ER before the patient was discharged, and the lung abscess was discovered by the staff radiologist *after* the patient was discharged. Thus the only knowledge that the hospital had at the time of discharging the patient was that the x-ray was negative, and thus there was no duty to stabilize the patient. This is far different from TG's case, where the lab tech knew of the abnormal results and Dr. Haynes had not seen the results. Thus, in TG's case, the hospital knew that the results were abnormal. At the very least, Dr. Haynes actually knew that he had not ruled out a bacterial source of infection as a cause of TG's vomiting, subjective fever, and cough. This is sufficient in itself as a reason to deny the summary judgment.

**6.      Wendy Guzman's signing of an outdated consent form does not exonerate Memorial from the transfer violations.**

Memorial argues that Wendy Guzman's signing of a consent form exonerates Memorial from the multiple transfer violations that are described in Plaintiffs' Response. This argument is factually false, and legally incorrect. First, the consent form that Wendy Guzman signed is legally inadequate, because it did not include a discussion of risks and benefits. Second, the consent was for transfer by AMR, the company that was sent away around 14:25. There was no consent signed for the transfer by the pediatric emergency transport that had been sent to Beaumont. Thus, there was no informed consent at all for this transfer, and the form signed by Wendy Guzman cannot exonerate Memorial under any circumstances.

In addition, the cases cited by Memorial do not support the proposition for which they are cited. *Estate of Robbins v. Osteopathic Hosp. Founders Assoc.,* F.Supp.2d 1221 (N.D. OK. 2000) was a case in which the content of the informed consent form was disputed, despite the fact that the Plaintiff had signed a portion of the form, but not in the right place. The Court *denied* the summary judgment, based on the technical requirements of EMTALA's transfer statute and regulations. *Robbins* is no support for Memorial. *Sanchez Rivera v. Doctors Center Hosp., Inc.,* 247 F.Supp.2d 90 (D. P. R. 2003) was a case in which the primary transfer issue was one of informed consent. There was no issue presented about the appropriateness of the transfer, whether there was a bed available at the transferee hospital, or any of the other issues involved in TG's case. The quoted portion of the opinion related to the certification by the emergency physician himself that it was his decision to transfer the patient because there were no surgical service available at the transferring hospital and the patient needed emergency surgery. The case in no way stands for the proposition that a signed informed consent (assuming it is valid) absolves a hospital of other transfer violations.

**CONCLUSION**

Memorial's latest reply brief adds nothing of substance. The cases cited in this reply do not support the granting of the motion for summary judgment. Indeed, the Cohen article, when read in its entirety, demonstrates that Memorial's motion is an attempt to have this Court abandon traditional EMTALA analysis, and strike out on a brave new world of interpreting statutes based on vague legislative intent, rather than the language actually adopted by Congress. The Supreme Court rejected such an approach in *Roberts v. Galen of Virginia.* This Court should likewise reject this approach and deny Memorial's motion for partial summary judgment on the EMTALA issues in this case.

RESPECTFULLY SUBMITTED

_____/s/ Phillip A. Pfeifer_____

Phillip A. Pfeifer
Phillip A. Pfeifer, PC
5216 Jackson St.
Houston, TX 77004
SBOT No. 15883200
Fed. ID No. 2005
713.528.7700 (voice)
1.866.616.6888 (fax)
Attorney for Plaintiff(s)

## CERTIFICATE OF SERVICE

I, Phillip A. Pfeifer, attorney of record for Plaintiffs, hereby certify that a true and correct copy of Plaintiffs' Supplemental Response to Defendant Memorial Hermann's Motion for Partial Summary Judgment was served on all counsel of record on May 18, 2009 in accordance with the Federal Rules of Civil Procedure, by electronic document transfer by the Clerk of the Court.

_____*/s/ Phillip A. Pfeifer*_____