UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WENDY GUZMAN, INDIVIDUALLY AND AS NEXT FRIEND OF T., A MINOR | § § § § | |
| v. | § § | C.A. No. 07-03973 |
| MEMORIAL HERMANN HOSPITAL SYSTEM, D/B/A MEMORIAL HERMANN SOUTHEAST HOSPITAL | § § § § | |

**DEFENDANT MEMORIAL HERMANN HOSPITAL SOUTHEAST'S SUPPLEMENTAL REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT POST ORAL ARGUMENT**

Defendant Memorial Herman Southeast Hospital files this Supplemental Reply to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment Post Oral Argument makes the following responses to Plaintiff's Post Oral Argument Reply Brief.

**1. EMTALA does not require ancillary services to be used for every screening exam.**

Plaintiff's argument requires every medical screen to use ancillary services if they are available at the hospital. Again, we refer the court to the New York Times article. EMTALA requires an "appropriate" exam. Appropriate has been defined to mean an equitable, non-disparate exam. It has not been defined to require particular laboratory tests. If a hospital's medical screening policy does not require a particular test, then EMTALA does not require that test. There is no inference that Drs. Haynes and Siddiqi consider lab tests to be part of the medical screening. Each testified to the contrary. (*See,* Siddiqi, p. 159:7-15; Haynes, p. 151:13-18).

## 2. A medical screen is not required to diagnose a patient's illness, only to identify the presence or absence of an emergency medical condition.

If an emergency medical condition exists, the patient must be seen in the emergency room. If an emergency medical condition does not exist, the patient is not required to be seen in the emergency room. A medical screen does not include an entire diagnostic work up—just the determination of an emergency medical condition evidencing itself by acute and severe symptoms. Cases like *Hutchinson* and *Summers* maintain the correct focus on the screening exam as opposed to treatment or "work-up" that flows from the screen. Finally, this Court has already found that T. was not exhibiting acute and severe symptoms and that Dr. Haynes determined no emergency medical condition existed.

## 3. The Emergency Center Triage Guidelines are not a screening policy.

MHSE complied with its general written screening policy. Furthermore, the Triage Guidelines are not relevant to the determination of an emergency medical condition. For example, a urinalysis is not relevant to the determination of an emergency medical condition. If it is, every hospital in the country must provide diagnosis through lab test and treatment to all patients complaining of urinary tract infection. Surely, that is not what EMTALA was intended to do.

Tom Flanagan's testimony demonstrates that standardized protocols are not medical screening exams:

> Q. Okay. Then, let me back up for just a second and ask this general question: What do you understand to be a clinical pathway for -- in terms of the emergency department?
>
> A. My understanding is a clinical pathway is a standardized form, format and standardized protocol set forth by physicians so that you can treat patients if they fall under that protocol –
>
> Q. Okay.

A. -- and not have to wait for a physician order.

(Flanagan depo p. 42:5-15).

The Triage Guidelines represent an attempt to expedite patient flow when the emergency room is overwhelmed. The Guidelines set forth the types of tests that can be performed without harming the patient and that might be ordered as part of a diagnostic work-up. The Triage Guidelines certainly are not a medical screening exam. Failure to comply with the Triage Guidelines might support a claim for negligent work-up or diagnosis, but does not support a disparate screening exam violation. A medical screen is not a work-up. If it were, EMTALA would create the obligation to treat every patient until diagnosis, regardless of whether they had an emergency medical condition. The court in *Battle* left it to the jury to decide whether the patient, who was poor black, uninsured and presented during the Christmas holidays, was seen twice in the ER and twice sent home, was treated disparately or discriminated against. No similar evidence exists in this case.

**4. Memorial has never changed its position that it has no symptom specific medical screening policies:**

Q. What I want to know is whether there were any written policies or procedures of Memorial that related to what should be done to perform the medical screening exam for a pediatric patient who presents with chief complaint of vomiting, number one, cough, fever?

A. Absolutely not.

(Flanagan depo, p. 76-77)

Memorial did not make a new admission at oral argument that things like stroke and heart attack protocols exist:

Q. Now, back in February of '06 did Memorial have clinical pathways for any kind of condition within the emergency department at any of the hospitals to your knowledge? This is broad as it can get and I'll try to narrow it down. For example, were there clinical pathways for things like heart attack or stroke or --

A: In '06. I know that our Level One Trauma Center, our downtown campus, has some pathways. How long they have been in place, I can't -- I can't -- I can't -- I don't know. But the Level One Trauma Center was the one campus where you would -- that I recall where we dealt with clinical pathways, not the community hospitals.

(Flanagan depo, p. 42-43)

### 5. MHSE's medical screening policy applies to all patients, including T.G:

Q. (By Mr. Pfeifer) It's my understanding that Exhibit 10 (the medical screening policy), then, would include the information about the medical screening exam to be performed by a qualified non-physician medical personnel when they are doing the MSE on patients that are triaged and determined to be qualified to have a non-medical person perform the medical screening exam. Is that correct?

A. You need to repeat that.

Q. You've drawn a diagram here of Exhibit 5?

A. Correct.

Q. And in your diagram you have I guess what you call three buckets of patients. And I guess what I'm trying to figure out is: Is Exhibit 10 applicable to one or more of those buckets of patients that you have drawn?

A. It is applicable to the three buckets, correct.

(Flanagan depo, p. 71-72). (The drawing and "buckets" which describe the "screen-in" "screen-out" process are attached.)

The *Power* court notes that the general screening policy must be uniformly applied and in *Power*, the plaintiff presented evidence that she was a foreign national and uninsured—evidence that could support the claim that she was not treated equitably.

### 6. The *Hutchinson* case is on point.

EMTALA does not require any specific screening, just an equitable screening. There is no evidence in this case that T. was treated inequitably as opposed to negligently. *Hutchinson*, 793 F.Supp. 6, correctly notes that EMTALA creates a cause of action for "failure to treat" and limits its focus to screening exams as opposed to diagnosis of a condition. The language from

4

*Hutchinson* quoted by Plaintiff demonstrates only that if a specific case or hospital screening policy required a diagnostic test, then failure to provide the test could violate EMTALA.

### 7. The testimony of Dr. Siddiqi, Dr. Haynes, Tom Flanagan, and the policy itself are evidence of the screening policy.

The medical screening policy is the evidence of Memorial Hermann's screening policy. By law, Memorial Hermann cannot tell physicians how to practice medicine. Thus, Memorial Hermann made its screening policy applicable to mid level providers only. The policy does not require laboratory testing. It requires: assessment of chief complaint, history, vital signs, mental status, skin, ability to walk, a focused physical exam and an assessment of general appearance.

Plaintiffs' argument at the oral hearing that because the medical screening policy is a corporate policy it did not apply to MHSE is inaccurate. The screening policy applied at MHSE:

Q: Alright. Let me ask you this. With regard to a corporate policy would that policy be in force and effect for all the hospitals in the Memorial System, including Memorial Southeast?

A: That is correct.

(Flanagan depo. p. 31).

Dr. Haynes testified that the white cell differential is not part of a screening exam:

Q: If you have the white cell count differential information, do you consider that as part of your medical screening examination of the patient?

A: No. I don't believe it is part of the medical screening exam.

Haynes depo, p. 151).

### 8. There is no fact question regarding what Memorial's screening policy is.

Memorial's screening policy is the screening policy that has been produced. Memorial Hermann's response to Interrogatory No. 1 of Plaintiff's Second set of Interrogatories states that it has produced its medical screening policy and that no symptom specific screening policy exists.

5

9. **No additional discovery is needed.**

Plaintiffs stated at oral argument that they have presented sufficient evidence of disparate treatment. Defendants have demonstrated that Plaintiffs' claims are truly claims for negligence, not for inequitable screening under EMTALA. No additional discovery is needed to decide that issue.

In the event this Court does not grant its Motion for Summary Judgment, Defendant respectfully requests a full hearing on the issue of the production of patient files. Defendant Memorial Hermann Hospital Southeast respectfully requests the Court grant its Motion for Partial Summary Judgment.

SMYSER KAPLAN & VESELKA, L.L.P.

By: /s/ Christina A. Bryan
Craig Smyser
State Bar No. 18777575
Federal Bar No. 0848
Christina A. Bryan
State Bar No. 03264000
Federal Bar No. 15042
2300 Bank of America Center
700 Louisiana Street
Houston, Texas 77002
Telephone: 713/221-2300
Facsimile: 713/221-2320
ATTORNEYS FOR DEFENDANT
MEMORIAL HERMANN HOSPITAL SYSTEM
d/b/a MEMORIAL HERMANN SOUTHEAST
HOSPITAL

**CERTIFICATE OF SERVICE**

This pleading was served in compliance with the Federal Rules of Civil Procedure on this 5th day of June, 2009.

/s/ Christina A. Bryan
Christina A. Bryan